**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

BETH MARIE N.

                       Plaintiff,

      v.                                     3:22-CV-237
                                            (MAD/DJS)

COMMISSIONER OF SOCIAL SECURITY,

                       Defendant.
_____

**APPEARANCES:**                    **OF COUNSEL:**

OLINSKY LAW GROUP         HOWARD D. OLINSKY, ESQ.
Attorney for Plaintiff
250 South Clinton Street, Suite 210
Syracuse, New York 13202

U.S. SOCIAL SECURITY ADMIN.     NATASHA OELTJEN, ESQ.
OFFICE OF REG'L GEN. COUNSEL
Attorney for Defendant
6401 Security Boulevard
Baltimore, Maryland 21235

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION AND ORDER

     Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a

decision by the Commissioner of Social Security that Plaintiff was not disabled.  Dkt.

No. 1.  Currently before the Court are Plaintiff's Motion for Judgment on the Pleadings

and Defendant's Motion for Judgment on the Pleadings.  Dkt. Nos. 7 & 8.  For the

1

reasons set forth below, it is recommended that Plaintiff's Motion for Judgment on the Pleadings be granted and Defendant's Motion be denied.

# I. RELEVANT BACKGROUND

## A. Factual Background

Plaintiff was born in 1971. Dkt. No. 6, Admin. Tr. ("Tr."), p. 45. She completed a two-year college degree in accounting. Tr. at p. 48. She has past work experience in various retail positions including as an assistant store manager. Tr. at p. 122. Plaintiff alleges disability based upon a shoulder injury and anxiety. Tr. at p. 113.

## B. Procedural History

Plaintiff applied for disability and disability insurance benefits in December 2015. Tr. at p. 112. She alleged a disability onset date of May 29, 2015. *Id.* Plaintiff's application was initially denied on March 18, 2016, Tr. at p. 112, after which she requested a hearing before an Administrative Law Judge ("ALJ"). Tr. at pp. 158-159. Plaintiff appeared at a hearing before ALJ Brian LeCours on January 24, 2018, at which Plaintiff and a vocational expert testified. Tr. at pp. 78-106. On March 8, 2018, the ALJ issued a written decision finding Plaintiff was not disabled. Tr. at pp. 127-144. On October 23, 2019, the Appeals Council remanded the case back to the ALJ, Tr. at pp. 145-149, and another hearing was held before ALJ Dale Black-Pennington on September 1, 2020. Tr. at pp. 38-77. Following that hearing, ALJ Black-Pennington issued a written decision on October 21, 2020, which again found Plaintiff not disabled. Tr. at pp. 10-37. The Appeals Council denied Plaintiff's request for review on January

19, 2022, making the ALJ's decision the final decision of the Commissioner.  Tr. at pp.

1-6.

### C.  The ALJ's Decision

In her decision, the ALJ made the following findings of fact and conclusions of

law.  First, the ALJ found that Plaintiff met the insured status requirements of the Social

Security Act through June 30, 2022.  Tr. at p. 13.  Second, the ALJ found that Plaintiff

had not engaged in substantial gainful activity since May 29, 2015, the alleged onset

date.  *Id.*  Third, the ALJ found that Plaintiff had the following severe impairments: left

shoulder disorder, depressive disorder, and anxiety disorder.  *Id.*  Fourth, the ALJ found

that Plaintiff does not have an impairment or combination of impairments that meets or

medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1

(the "Listings").  Tr. at pp. 13-15.  The ALJ then found that Plaintiff has the residual

functional capacity to perform work at the light exertional level except that she is:

> able to occasionally perform overhead reaching bilaterally;
> occasionally crawl; not able to climb ladders, ropes or scaffolds;
> not able to perform overhead pushing, pulling, lifting or carrying
> with left upper extremity; able to perform unskilled work
> commensurate with SVP 1-3; able to make simple work-related
> decisions; able to have occasional interaction with coworkers,
> supervisors and the public; is expected to be off task less than to . .
> . 10% of the workday: and is expected to have about 10
> unscheduled absences each year.

Tr. at p. 15.

Next, the ALJ found that transferability of job skills was "not material to the

determination of disability because using the Medical-Vocational Rules as a framework

supports a finding that the [Plaintiff] is 'not disabled,' whether or not the [Plaintiff] has transferable job skills." Tr. at p. 18. The ALJ then determined that based on Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Tr. at pp. 18-19. The ALJ, therefore, concluded that Plaintiff is not disabled. Tr. at pp. 19-20.

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B. Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

Plaintiff asserts that the ALJ committed legal error in the evaluation of her treating physician's medical opinion and erred in the evaluation of her physical residual functional capacity ("RFC") by failing to include limitations opined by her treating providers related to Plaintiff's ability to reach overhead, sit/stand throughout the course of a workday, and her ability to remain on task and to meet attendance requirements. Pl.'s Mem. of Law at pp. 12-18. Plaintiff also contends that the ALJ erred in the

6

assessment of her mental RFC, because the opinion of her treating therapist Jane Becker, LCSW-R was not properly evaluated and because the ALJ improperly relied on the opinion of a one-time consultative examiner without proper analysis. *Id.* at pp. 18-25. In response, Defendant asserts that (1) substantial evidence supports the physical RFC assessment and (2) the opinions of Plaintiff's treating providers and of consultative examiner Dr. Jenouri are not inconsistent with the RFC. Def.'s Mem. of Law at pp. 4-13. Defendant also asserts that the mental RFC is supported by substantial evidence and that the ALJ did not err in her evaluation of the opinions related to Plaintiff's mental functioning. *Id.* at pp. 13-18.

Plaintiff's physical impairments appear to primarily stem from a 2013 left shoulder injury sustained while lifting paint cans at work. Tr. at pp. 50 & 635. Following that injury, Plaintiff was out of work for approximately six weeks. Tr. at p. 50. She returned to work on light-duty status, Tr. at p. 574, where she allegedly experienced sexual harassment from a male coworker which resulted in substantial anxiety. Tr. at p. 50. Plaintiff alleges disability as of May 29, 2015, which was the last date she worked on a full-time basis. *Id.* She continued to work on a part-time basis until June 28, 2019, when she was terminated for "taking an unpaid vacation" following her father's death. Tr. at pp. 49-50.

### A. Physical RFC

Plaintiff asserts that the ALJ erred by failing to include certain limitations from the opinion of her treating provider in the RFC without explanation as to why the more

favorable portions of the opinion were disregarded or discounted. Pl.'s Mem. of Law at pp. 14-17. At the outset, it is important to note that Plaintiff initially filed for disability benefits in December 2015 and accordingly the treating physician rule applies to evaluation of her claims. *See* Tr. at p. 113; 20 C.F.R. § 404.1527(c)(2) (containing the standard for evaluations of opinion evidence for claims filed before March 27, 2017). "The treating physician rule generally requires deference to the medical opinion of a claimant's treating physician." *Arch v. Comm'r of Soc. Sec.*, 2021 WL 4200719, at *10 (S.D.N.Y. Aug. 3, 2021) (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)), *report and recommendation adopted*, 2021 WL 4710448 (S.D.N.Y. Oct. 6, 2021). "A treating physician's medical opinion is given controlling weight if it is 'well supported by medically acceptable techniques and is not inconsistent with substantial evidence in the record.'" *Arch v. Comm'r of Soc. Sec.*, 2021 WL 4200719, at *10 (quoting *Rodriguez v. Colvin*, 2014 WL 5038410, at *17 (S.D.N.Y. Sept. 29, 2014)). If, however, the ALJ gives a treating physician's opinion less than controlling weight, the ALJ must provide "good reasons" for doing so. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). To that end, the Second Circuit has held that

> [t]o override the opinion of the treating physician, … the ALJ must explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist.

*Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (per curiam) (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)) (internal alteration omitted).

8

Nevertheless, an ALJ's failure to recite "'each and every factor' is unnecessary 'where the ALJ's reasoning and adherence to the regulation are clear.'" *Arch v. Comm'r of Soc. Sec.*, 2021 WL 4200719, at *10 (quoting *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013)).  At issue in this case is a March 25, 2020 medical source statement completed by Plaintiff's treating providers Christy O'Donnell, F.N.P., and Robert Garfield, D.O., regarding Plaintiff's impairments.  Tr. at pp. 1218-1220.  Dr. Garfield indicated that he had been treating Plaintiff since December 2016.  Tr. at p. 1218.  Dr. Garfield stated that Plaintiff was diagnosed with an incomplete tear of her left rotator cuff, which caused pain with overhead reaching, flexion, and abduction.  *Id.*  ALJ Black-Pennington found this opinion to be "generally persuasive" and gave it "great weight, as this is a treating physician, opinion is consistent with treatment records and supported by objective clinical findings and diagnostic imaging studies."  Tr. at p. 26.  The physical RFC included in the ALJ's decision is generally consistent with the limitations opined by Dr. Garfield, with a few notable exceptions.

ALJ Black-Pennington found that Plaintiff was capable of performing light work as defined in 20 C.F.R. § 404.1567(b), with additional limitations.  Tr. at p. 15.  This is consistent with Dr. Garfield's opinion that Plaintiff retained the physical capability to frequently lift or carry ten pounds or less, occasionally lift or carry twenty pounds, and could stand/walk at least six hours total in a given workday.  *See* Tr. at p. 1219; 20 C.F.R. § 416.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the

9

weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.").   Plaintiff specifically objects to several differences between the ALJ's RFC determination and the opined limitations from her treating provider regarding the following: (1) her ability to reach; (2) her ability to remain on-task; (3) the number of absences she would accrue due to her condition; and (4) her need for a sit/stand option.  Pl.'s Mem. of Law at pp. 12-18.  The Court will address each of these limitations in turn.

### 1. Reaching Limitation

The ALJ found that Plaintiff could "occasionally perform overhead reaching bilaterally" and is "not able to perform overhead pushing, pulling, lifting or carrying with [her] left upper extremity."  Tr. at p. 15.  In contrast, in response to a question which asked "How often can your patient perform the following activities? … Arms: reaching (including overhead)" Dr. Garfield answered "never."  Tr. at p. 1219.  There appears to be no disagreement in the record that Plaintiff's shoulder injury impacted her range of motion and her ability to reach.  For example, an April 2015 treatment note from Robert M. Schneider, M.D., stated that Plaintiff was still having problems with her shoulder following a cortisone shot and physical therapy and noted a decreased range of motion in her left shoulder.  Tr. at pp. 623-624.  As a result, Dr. Schneider stated that Plaintiff should refrain from lifting, pulling, and pushing, was subject to a ten-pound weight restriction, and "no overhead reaching."  Tr. at p. 624.  In October of 2015, Albert

10

Kochersperger, M.D., performed an independent medical evaluation of Plaintiff for Workers' Compensation. Tr. at pp. 626-628. Dr. Kochersperger observed reduced grip strength in Plaintiff's left hand and stated that "[l]eft shoulder motion, measured with goniometer, is forward flexion to 70, abduction to 80, and painful. External rotation is to 50, and no internal rotation at all." Tr. at p. 627. Similarly, in April 2016, Matthew DiCaprio, MD, noted range of motion in Plaintiff's left shoulder as "90 degrees active and passively of abduction, forward flexion to approximately 90 degrees actively and approximately 100 degrees passively" and observed that "[s]he has pain globally around her shoulder with any palpation" and "continues to be very guarded." Tr. at p. 683.

Consultative examiner Gilbert Jenouri, M.D., observed "[s]houlder forward elevation on right 140 degrees and left 100 degrees, abduction on right 130 degrees and left 80 degrees" in a 2016 consultative exam. Tr. at p. 679. Dr. Jenouri opined that Plaintiff "has moderate restrictions in lifting, carrying, and reaching, particularly with the left upper extremity." Tr. at p. 680. The ALJ gave Dr. Jenouri's 2016 opinion "great weight, as this is an examining physician with specific program knowledge, opinion is consistent with the record, supported by objective clinical findings and interpreted as ability to perform light work activities with restrictions in reaching, which supports the residual functional capacity described above." Tr. at p. 23. The issue here is that although Dr. Jenouri's opinion also recognizes Plaintiff's reaching limitations, there are several crucial differences between the opinions and the ALJ did not provide an explanation of how those discrepancies were reconciled.

First, Plaintiff's treating provider Dr. Garfield opined that she could **never** perform reaching activities, while Dr. Jenouri opined that she had a "moderate" restriction in reaching, particularly with the left upper extremity. *See* Tr. at pp. 680 & 1219. The ALJ ultimately found that Plaintiff could "occasionally perform overhead reaching bilaterally." Tr. at p. 15. In the context of social security disability, the word "occasional" is a term of art that "means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5; *Theresa R. v. Saul*, 2019 WL 5431311, at *3 (D. Me. Oct. 23, 2019).

In this Court's view, there is a significant difference between "never" having the ability to reach and a finding that Plaintiff retained the ability to reach for up to one-third of the workday. The ALJ's finding with respect to Plaintiff's reaching ability appears to be an implicit rejection of the opined limitation from Plaintiff's treating physician. *See Mathews v. Comm'r of Soc. Sec.*, 2020 WL 4352620, at *8 n.10 (W.D.N.Y. July 29, 2020) ("Irrespective of the terminology used by the ALJ, whether it be 'great weight,' 'little weight,' 'some weight,' or 'no weight,' the relevant inquiry is whether the ALJ in fact incorporates or accounts for the limitations assessed by the medical professional in the RFC"). While the ALJ was "not obligated to reconcile explicitly every conflicting shred of medical testimony, … an ALJ who chooses to adopt only portions of a medical opinion must explain his or her decision to reject the remaining portions." *Ryan H. v. Comm'r of Soc. Sec.*, 2021 WL 4059327, at *7

12

(W.D.N.Y. Sept. 7, 2021). This is especially true where, as here, the medical opinion comes from a treating physician. *See id.* at *7-8 (remand warranted where ALJ did not provide good reasons for rejecting only the portions of treating physician opinion that were most favorable to the claimant).

Second, it is not clear how the ALJ determined that Plaintiff's reaching limitation should be confined to overhead reaching only. "[T]he term 'reaching' is defined by the Administration's Social Security Rulings ('SSRs') as 'extending the hands and arms in any direction.'" *Woodard v. Comm'r of Soc. Sec.*, 2019 WL 5092126, at *4 (W.D.N.Y. Oct. 11, 2019) (citing SSR 85-15, 1985 WL 56857, at *7). Defendant here has offered a plausible explanation for the ALJ's decision to limit Plaintiff's overhead reaching, stating that "[g]iven Dr. Jenouri's observation of limited forward elevation, the ALJ limited Plaintiff to occasional overhead reaching with both arms (Tr. 15; see Tr. 79)." Def.'s Mem. of Law at p. 7. While this explanation appears to have a rational basis, it was not offered by the ALJ at any point in the analysis. Although "a lack of explanation is not error where the reviewing court can determine the underlying rationale," *Lawrence W. v. Comm'r of Soc. Sec.*, 2018 WL 4509490, at *8 (citing *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 78 (N.D.N.Y. 2005) (citation and internal quotation marks omitted), such a determination cannot properly be based on the Commissioner's post hoc rationalizations. *See Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("[a] reviewing court may not accept appellate counsel's post hoc rationalizations for agency action"); *Tammie S. v. Comm'r of Soc. Sec.*, 2022 WL 356754, at *7

13

(N.D.N.Y. Feb. 7, 2022) (citing cases for the proposition that "[c]ounsel's arguments before [the reviewing court] … cannot save the ALJ's decision from remand.").

To be sure, there is certainly evidence that would tend to show Plaintiff's reaching abilities were most limited when reaching in an overhead capacity. *See, e.g.*, Tr. at p. 573 (2014 treatment notes from Dr. DiCaprio referring to a "10-pound weight restriction with no overhead lifting"); Tr. at p. 575 (2015 treatment notes describing Plaintiff's complaints that "reaching with the left upper extremity is significantly bothering her"); Tr. at p. 697 (2015 statement from Workers' Compensation independent medical evaluation recommending "lifting limitations 20 pounds to the waist level"); and Tr. at p. 1212 (2020 treatment note from FNP O'Donnell stating "no overhead reaching up behind back no lifting over 20 pounds").

However, there was also evidence in the record which showed limitations when reaching in other directions. During the hearing, Plaintiff described having difficulty doing laundry, which required reaching down, and difficulty putting items into a shopping cart when grocery shopping, as well as an inability to vacuum or sweep. Tr. at p. 56. She then explained that she never does any lifting above waist level. Tr. at p. 60. Other evidence in the record showed a decreased range of motion in other directions, such as a 2015 physical examination which revealed decreased range of motion in her left shoulder, with "forward flexion to 70 [degrees], abduction to 80, and painful. External rotation is to 50, and no internal rotation at all." Tr. at p. 627. Another examination described "significant limitations of both the right and left shoulder; the

left shoulder motion 70 degrees of forward elevation, the right shoulder motion 110 degrees, measured with goniometer. Abduction of 50 degrees on the left, 70 degrees on the right. Beth M. . . . has no external rotation. Beth M. . . . has 60 degrees of internal rotation, both left and right. Beth M. . . . has 20 degrees of posterior extension on the left and 30 degrees of posterior extension on the right. Beth M. . . . has 10 degrees of adduction on the left and 30 degrees of adduction on the right." Tr. at p. 694. The ALJ did not explain how it was determined that Plaintiff's reaching limitations were solely related to overhead reaching, and neither Dr. Garfield nor Dr. Jenouri's opinions provide obvious support for that decision.

Taken together, these issues leave the Court unable to determine whether the treating physician rule was properly applied in this case. Although the ALJ provided some explanation for why Plaintiff's subjective reports of pain were found not entirely credible, the explanation does not provide the requisite "good reasons" for rejecting significant portions of the treating physician's opinion. For example, the analysis points to barely-legible therapy notes which referenced that Plaintiff went canoeing, Tr. at p. 857, helped her sister pack, Tr. at p. 1068, and went hunting, Tr. at p. 1073, at various times. Tr. at p. 26. However, these notes provide only passing references to these activities, without any indication as to how Plaintiff actually performed the activities or for what duration. Even assuming that the ALJ did rely on these sporadic reports of Plaintiff engaging in leisure activities, the decision failed to explain how that evidence might have contradicted Dr. Garfield's opinion regarding her reaching abilities. The

Court recommends that the lack of explanation on this record constituted reversible error. *See David E. v. Saul*, 2021 WL 1439668, at *4-5 (N.D.N.Y. Apr. 16, 2021).

The vocational expert's testimony suggests that this issue could very well have been dispositive on the ultimate issue of disability. Plaintiff's legal representative specifically questioned the vocational expert on this matter in the following exchange:

> Q. Mr. Slavin, if somebody, with regards to Hypothetical # 1, was further limited to only being able to reach on an occasional basis bilaterally, would that affect their ability to do the jobs that you stated?
>
> A. Yes. I specifically gave jobs where you're working at typically one level. Reaching above shoulder level is the only way you can tell how your reaching is by reading the job tasks. So for example, the assembly job I gave, the benchwork job in particular, where the person would be reaching forward and down. But when you get to unskilled work, there's only a few jobs in the light range where reaching is occasional.
>
> Q. Okay. So the jobs you stated there, the person wouldn't be able to do that if they could occasionally reach. Correct?
>
> A. Correct.

Tr. at p. 73.

Any error on this point, therefore, could not have been harmless. *See, e.g., Navedo v. Kijakazi*, 616 F. Supp. 3d 332, 344-45 (S.D.N.Y. 2022) ("An ALJ's failure to apply the correct legal standard constitutes reversible error if that failure might have affected the disposition of the case. However, the Court need not remand the case if the ALJ only committed harmless error, *i.e.*, where the application of the correct legal principles to the record could lead only to the same conclusion.") (internal quotation marks and citations omitted).

16

### 2. Time Off Task/Absenteeism

Dr. Garfield opined that Plaintiff would sometimes need to take unscheduled breaks during an eight-hour workday. Tr. at p. 1220. He estimated that these breaks would be needed every two hours, and Plaintiff would require ten to fifteen minutes of rest before returning to work. *Id.* Dr. Garfield also opined that Plaintiff would be "off task (i.e. unable to maintain attention or perform at a consistent pace)" ten percent of each day due to her impairments. *Id.* He also estimated that Plaintiff would likely be absent from work about one day per month due to her impairments. *Id.* The ALJ appears to have adopted *most* of these opined limitations—in fact, the RFC states that Plaintiff "is expected to be off task less than to . . . 10% of the workday[;] and is expected to have about 10 unscheduled absences each year." Tr. at p. 15. This is certainly very close to Dr. Garfield's opinion, which estimated 10% time off task and approximately 12 absences per year. However, in this Court's view, the following exchange between the ALJ and the vocational expert raises some questions as to how exactly the ALJ arrived at these specific findings.

Q. What is the employer tolerance for time off task?

A. Generally, if you're off task 10%, which is six minutes every 60 minutes, if you're lucky you'll be counseled by your supervisor. If you don't improve, you're going to be let go.

Q. Okay. And is there a period given for improvement, that that would be observed?

A. Every supervisor's different, Your Honor. I mentioned, if you're lucky, the supervisor will counsel you until you improve. Some supervisors will

17

> just say, look, you're not working fast enough. I can't use you here, and
> let you go. It depends on the supervisor, and it depends on the attitude of
> the employee as well.

Tr. at p. 72; *see also* Tr. at p. 75 ("As I already testified, that your 10% [time off task]

would not typically be acceptable.").

Again, Dr. Garfield opined that Plaintiff would be off-task ten percent of each

workday and would require unscheduled breaks lasting ten to fifteen minutes every two

hours.  Tr. at p. 1220.  Per the vocational expert's testimony, this would likely exceed

employer tolerances for time off task and could again be dispositive on the issue of

disability.  The only other opinions in the record as to these limitations came from

Plaintiff's treating mental health provider, Jane Becker, LCSW-R, whose opined

limitations were even more restrictive than Dr. Garfield's.  *See* Tr. at p. 925 (2019

opinion stating that Plaintiff would be off task more than twenty percent of each

workday and absent more than four days per month); Tr. at pp. 918-920 (2018 opinion

stating that Plaintiff would be off task between 30% to 50% of each workday and absent

more than three times per month).  Without any explanation as to why Dr. Garfield's

opinion on this issue was discounted, the Court is unable to determine whether the

substance of the treating physician rule was adhered to.  Accordingly, the Court similarly

recommends remand for further consideration on this narrow, yet potentially dispositive

issue.

### 3. Sit/Stand Limitation

Unlike the previous issues identified, however, Plaintiff's argument regarding the need for a sit/stand work option appears misplaced. Plaintiff asserts that Dr. Garfield "opined that Plaintiff could sit and stand/walk a total of 2 hours each at one time." Pl.'s Mem. of Law at p. 16 (citing Tr. at p. 1219). This interpretation is not consistent with what Dr. Garfield's opinion actually states. The opinion was provided on a form which asked Dr. Garfield to "[p]lease circle the hours and/or minutes that your patient can sit *at one time*, e.g., before needing to get up, etc." Tr. at p. 1218. The same question was then asked regarding Plaintiff's ability to stand. To both questions, Dr. Garfield circled the response which indicated "More than 2 Hours." Tr. at p. 1218. On the next page, Dr. Garfield was asked to "indicate how long your patient can sit and stand/walk *total in an 8-hour workday* (with normal breaks)." Tr. at p. 1219. While the column for "sit" was left blank, perhaps inadvertently, under the "stand/walk" column, Dr. Garfield selected "At least 6 hours." *Id.* The next question asked whether "your patient need[s] a job that permits shifting positions *at will* from sitting, standing, or walking," to which Dr. Garfield responded "no." *Id.* Accordingly, this does not provide evidence of the need for a sit/stand option.

### B. Mental RFC

Plaintiff alleges that the ALJ committed legal error in the evaluation of opinion evidence from her treating therapist and from a one-time consultative examiner and

therefore formulated an RFC which is not supported by substantial evidence. Pl.'s Mem. of Law at pp. 18-25. The ALJ recognized depressive disorder and anxiety disorder as severe impairments and included the following limitations in the RFC: "able to perform unskilled work commensurate with SVP 1-3; able to make simple work-related decisions; able to have occasional interaction with coworkers, supervisors and the public; is expected to be off task less than [] 10% of the workday[;] and is expected to have about 10 unscheduled absences each year." Tr. at pp. 13 & 15. Plaintiff's treating therapist, Jane Becker, LCSW-R, provided an assessment of Plaintiff's mental RFC on January 3, 2018, and again on December 18, 2019. Tr. at pp. 918-920 & 923-927. The ALJ specifically addressed this opinion but noted that Becker was not an acceptable medical source per Social Security Regulations. Tr. at pp. 24-25. Nevertheless, the ALJ went on to evaluate the persuasiveness of the opinion in detail.

Plaintiff asserts that the ALJ committed legal error in the assessment of this opinion because the "analysis does not provide a logical bridge between LCSW-R Becker's opinion and the evidence he used to reject that opinion." Pl.'s Mem. of Law at p. 21. Plaintiff specifically objects to the ALJ's consideration of evidence that Plaintiff spent time with family members, engaged in group therapy, was observed to be healthy and alert, and used medication sparingly, arguing that this evidence is not logically related to limitations regarding panic attacks, anxiety, and PTSD. *Id.*

Plaintiff also asserts that the ALJ's reliance on the opinion of a one-time psychological consultative examiner is "unexplained." Pl.'s Mem. of Law at p. 24.

20

Mary Ann Moore, Psy.D., performed a consultative examination of Plaintiff on March 4, 2016. Tr. at pp. 670-674. The ALJ provided a detailed analysis of Dr. Moore's opinion, noting that the consultative examination included "specialized testing" as well as a mental status examination, the results of which were relatively normal. Tr. at p. 23. The ALJ noted that "testing showed intact attention and concentration, mildly impaired memory skills, average cognitive functioning and fair to good insight and judgment." *Id.* The ALJ also identified that "[m]ental status evaluation showed manner of relating was socially adequate, fair hygiene, appropriate eye contact, normal posture and motor behavior, euthymic mood and affect was full range and appropriate." *Id.* Dr. Moore opined that Plaintiff had "mild to moderate limitations appropriately dealing with stress and mild limitations learning new tasks, performing complex tasks independently, making appropriate decisions, relating adequately with others and maintaining a regular schedule." Tr. at pp. 24 & 673. Dr. Moore's opinion was given "great weight, as this is an examining physician with specific program knowledge, opinion is consistent with the record and supported by specialized testing and mental status evaluation." Tr. at p. 24.

The ALJ, of course, was entitled to rely on an opinion from a consultative examiner. *See Allen v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 327, 335 (W.D.N.Y. 2018) (noting that "[a]n ALJ is entitled to rely on the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability.") Moreover, Becker is not

considered an acceptable medical source under the applicable regulations and therefore the treating physician rule does not apply. *See id.* (noting that "the opinions of social workers are not entitled to controlling weight").

"[T]he ALJ was under no obligation to accept the opinion of Plaintiff's treating provider. However, [s]he was obligated to explain [her] reasons for discounting the opinion in sufficient detail to allow this Court to conduct a meaningful review of this decision." *Kimberly W. v. Kijakazi*, 2022 WL 561665, at *4 (N.D.N.Y. Feb. 24, 2022). In the Court's view, that burden was met here. In concluding that Becker's opinions should be afforded only limited weight, the ALJ articulated a number of basis for finding that the opined limitations were unsupported by Becker's own records and also those of Plaintiff's primary care provider. Tr. at p. 25. Those reasons were specifically stated and "[w]hile Plaintiff may disagree with the ALJ's assessment of the record evidence, it is not this Court's role to reweigh the evidence." *Edward A. v. Saul*, 2020 WL 4015265, at *3 (N.D.N.Y. July 15, 2020).

Accordingly, the Court recommends that Plaintiff's arguments on this issue are not a basis for remand.

## IV. CONCLUSION

**ACCORDINGLY**, it is

**RECOMMENDED**, that Plaintiff's Motion for Judgment on the Pleadings be **GRANTED**; and it is further

**RECOMMENDED**, that Defendant's Motion for Judgment on the Pleadings be **DENIED**; and it is further

**RECOMMENDED**, that Defendant's decision denying Plaintiff disability benefits be **REVERSED** and the case be **REMANDED** pursuant to section four for further proceedings; and it is further

**ORDERED**, that the Clerk of the Court shall serve copies of this Report-Recommendation and Order on the parties.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human*

*Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Dated: August 9, 2023
       Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

24